CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
APR 19 2012
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| STACEY HAILEY, *Plaintiff,* | CASE NO. 6:11-cv-00022 |
| v. | MEMORANDUM OPINION |
| PATRICK R. DONAHOE, POSTMASTER GENERAL & CHIEF EXECUTIVE OFFICER, UNITED STATES POSTAL SERVICE, *Defendant.* | JUDGE NORMAN K. MOON |

This matter is before the Court upon Defendant's motion for summary judgment. After conducting a hearing on April 13, 2012, I entered an order in which, *inter alia*, I denied in part that motion as moot with respect to Plaintiff's disability discrimination claims upon which I decided to permit limited discovery. As it concerns Plaintiff's retaliation claims, however, Defendant's motion for summary judgment can be decided at this point in light of Plaintiff's concession at the hearing that discovery on those claims could not unearth additional material facts. For the reasons that follow, I will grant in part Defendant's motion for summary judgment with respect to Plaintiff's retaliation claims.

## I. BACKGROUND

Plaintiff Stacey Hailey ("Hailey") worked for the United States Postal Service (the "postal service") as a letter carrier at the carrier annex in Lynchburg, Virginia for approximately fourteen years until the spring of 2008. Hailey alleges that he suffers from chronic back pain (as a result of slipped discs) and a neck condition (more specifically, joint compression) that restrict

his physical capabilities. Additionally, Hailey claims that he suffers from and is medically treated for depression. Accordingly, Hailey maintains that he is a disabled person for purposes of the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 29 U.S.C. § 701, *et seq.*

According to Hailey, he suffered the injuries that limit his physical faculties during the course of his employment with the postal service. However, he does not specify how or when the injuries were sustained. At some unidentified point in time, Hailey informed the postal service of his injuries, and, for unspecified periods of time during his career, Hailey was provided with light duty work assignments. Further, Hailey maintains that he was permitted to take leave from work periodically in order to seek treatment for his conditions.

However, at some undisclosed point in time, Hailey alleges that the postal service stopped making accommodations for him and instead started disciplining him for not being able to perform his employment responsibilities. According to Hailey, when he complained about no longer being given reasonable accommodations, the postal service retaliated against him for missing work by withholding pay and terminating his employment. However, Defendant denies these allegations. Exhibits attached to his motion for summary judgment demonstrate that during 2007 and 2008, Hailey was absent from work for lengthy, unscheduled periods of time. Defendant disciplined Hailey for these absences in the following ways:

- On August 3, 2007, Hailey was issued a letter of warning as a result of his absence from work between June 8, 2007 and July 17, 2007;
- On November 20, 2007, Hailey was issued a seven-day no-time off suspension as a result of his absence from work between September 4, 2007 and October 6, 2007; and
- On January 24, 2008, after having failed to attend a pre-disciplinary interview on December 28, 2007, Hailey was issued a fourteen-day no-time off suspension as a result

- 2 -

Case 6:11-cv-00022-NKM-RSB Document 27 Filed 04/19/12 Page 2 of 16 Pageid#: 185

of his absence from work between November 20, 2007 and January 16, 2008. This suspension was set to begin on February 9, 2008.

On February 2, 2008, Hailey's supervisor conducted a pre-disciplinary interview prior to initiating his removal. Defendant maintains that at the interview, Hailey did not offer any explanation for his unauthorized absences.

On or about February 5, 2008, Hailey's physician at the University of Virginia faxed a medical certification to the postal service. The medical certification stated that Hailey could return to work for light duty assignments through February 18, 2008, with no lifting of more than ten pounds and with other restrictions on bending, standing, and squatting. According to Defendant, these restrictions were such that Hailey could not carry any of the mail routes at the Lynchburg carrier annex. Moreover, the carrier annex only had one full-time light duty position, which was already filled. Importantly, Defendant maintains that prior to receipt of the medical certification on February 5, 2008, it had already decided, in light of the pre-disciplinary interview that was conducted on February 2, 2008, that Hailey should be terminated.

On February 9, 2008, Hailey's supervisor sent a request to the postal service's labor relations office to draft a notice of removal for Hailey. The manager of the carrier annex concurred with this request. Hailey was issued a formal notice of removal on February 19, 2008, which cited his unsatisfactory attendance record. The notice of removal identified its effective date as March 28, 2008. On February 20 and 25, 2008, Hailey sent written requests to the Lynchburg postmaster in which Hailey sought light duty work assignments. The Lynchburg postmaster denied these requests based on the fact that Hailey's supervisors had already decided to remove him.

Pursuant to the postal service's collective bargaining agreement ("CBA") with Hailey's union, Hailey was entitled to remain either on the job or on the clock at the option of the postal service for 30 days prior to the effective date of his removal. Because of an error by the postal service, Hailey was not immediately put on the clock. As a result, on March 13, 2008, Hailey's manager authorized a salary advance of $1,196.00, which Hailey agreed to repay.

In the meantime, pursuant to the CBA, Hailey pursued a grievance with respect to his removal. On April 17, 2008, the postal service concluded that there was no violation of the CBA and that Hailey had been removed for just cause. On May 6, 2008, Hailey contacted a postal service equal employment opportunity ("EEO") counselor for the first time. On May 8, 2008, Hailey received a paycheck including the pay adjustment for which he had received the $1,196.00 salary advance. At that time, Hailey repaid $700.00 of the salary advance. On May 29, 2008, the Lynchburg postmaster issued a letter of demand to Hailey, seeking repayment of the remaining $496.00 of his salary advance.

On June 13, 2008, Hailey submitted to the postal service his first formal EEO complaint of discrimination. In the EEO complaint, Hailey specifically alleged that he was discriminated against because of his physical and mental disabilities. Hailey subsequently amended his EEO complaint to include a retaliation claim for the postal service's issuance of the May 29, 2008 letter of demand, which Hailey contends was issued in response to his earlier EEO protected activity. Ultimately, these claims were accepted for EEO investigation.

Separately, on August 7, 2008, Hailey's CBA union grievance regarding the letter of demand was settled such that he would receive a paycheck from which to repay the remaining $496.00 from his earlier salary advance. However, when Hailey tried to pick up that paycheck, he refused to repay the $496.00, and so the paycheck was not released to him.

On September 19, 2009, Hailey initiated a second formal EEO complaint, alleging that around June 12 or 15, 2009, the postal service retaliated against him by not giving him a $1,532.00 check because he had recently filed an EEO complaint.

On July 19, 2010, the administrative law judge dismissed Hailey's request for a hearing on his original June 13, 2008 EEO complaint because he did not comply with the postal service's previously issued discovery requests. On September 1, 2010, the postal service issued its final agency decision ("FAD"). Hailey appealed the adverse decision to the Office of Federal Operations ("OFO") within the Equal Employment Opportunity Commission ("EEOC"). In an opinion dated March 30, 2011, the OFO upheld the postal service's FAD, and on July 15, 2011, the OFO denied Hailey's request for reconsideration.

Additionally, in a decision dated September 29, 2010, an administrative law judge dismissed Hailey's second (September 19, 2009) EEO complaint alleging retaliation, holding that it was a collateral attack on a grievance settlement and that the plaintiff had not produced prima facie evidence of retaliation. The instant action ensued.

Hailey contends that he was, and remains, a qualified person with a disability, a qualified person perceived to have a disability, and/or a qualified person with a history of disability within the meaning of the Rehabilitation Act. Hailey alleges that Defendant's actions constitute discrimination and retaliation against him with respect to the terms, conditions, and privileges of his employment in violation of the Rehabilitation Act. Among other forms of relief, Hailey seeks reinstatement, back pay, reimbursement for lost benefits, front pay, and additional compensatory damages.

Defendant filed the motion for summary judgment that is presently before me on February 28, 2012. On March 13, 2012, Hailey filed his response in opposition to Defendant's

motion. In his response, Hailey attached a declaration prepared by his attorney attesting that Hailey was, at least as of the filing of the response, unable to present essential facts to justify his opposition to Defendant's motion because essentially no discovery had taken place.[1] Accordingly, Hailey requested that I deny Defendant's summary judgment motion and amend the pretrial order to reflect additional time to complete discovery.[2] However, at the hearing I conducted on April 13, 2012, counsel for Hailey conceded that he could not proffer what essential facts discovery might help to develop with respect to Hailey's retaliation claims. Accordingly, while I have entered an order permitting limited discovery with regard to Hailey's *disability discrimination* claims in light of his opposition to Defendant's summary judgment motion, I have concluded that such discovery on Hailey's *retaliation* claims would be fruitless. Therefore, at this juncture, it is appropriate to resolve Defendant's summary judgment motion with respect to those retaliation claims.

## II. LEGAL STANDARD

A court should grant summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also*

---

[1] Generally, "a district court must refuse summary judgment 'where the nonmoving party has not had the opportunity to discover information that is essential to [its] opposition.'" *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986)). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). In order to raise this issue, the nonmoving party must file an affidavit or declaration explaining why, "for specified reasons, it cannot present facts essential to justify its opposition" without more discovery. Fed. R. Civ. P. 56(d). If the nonmoving party can make this showing, the court may: "(1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." *Id.*

[2] Although there has been essentially no formal discovery in the instant case, discovery was conducted pursuant to Hailey's EEO complaints, and the materials and information uncovered in the course of those administrative processes have been readily available to Hailey.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (citations omitted). "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). If the nonmoving party bears the burden of proof, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party shows such an absence of evidence, the burden shifts to the nonmoving party to set forth specific facts illustrating genuine issues for trial. *See* Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324. Ultimately, the trial court has an "affirmative obligation" to "prevent 'factually unsupported claims [or] defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 323–24).

### III. DISCUSSION

#### A. The Rehabilitation Act

Hailey brings this action under the Rehabilitation Act, 29 U.S.C. § 701, *et seq.*, which governs disability discrimination in federal employment. It is well-established that, notwithstanding the absence of an express private right of action in the Rehabilitation Act,

individuals may sue to enforce its provisions. *See Pandazides v. Va. Bd. of Educ.*, 13 F.3d 823, 828 (4th Cir. 1994). As the district court for the District of Maryland recently summarized,

> [t]he standards used to determine whether a federal employer has discriminated under the Rehabilitation Act are those set forth under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111, *et seq.* The Rehabilitation Act incorporates the ADA's anti-retaliation provision. *See* 42 U.S.C. § 12203(a). Thus, in addition to protecting federal employees against discrimination on the basis of disability, the Rehabilitation Act bars retaliation against employees who have "opposed any act or practice made unlawful by [the ADA or the Rehabilitation Act] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 12203(a).

*Madock v. McHugh*, No. 10-02706, 2011 WL 3654460, at *13 (D. Md. Aug. 18, 2011).

### B. Methods of Proof

As a general matter, there are two means by which a plaintiff may prove intentional employment discrimination or retaliation. *Peters v. Jenney*, 327 F.3d 307, 320 n.15 (4th Cir. 2003). The first of these methods is to offer "direct or indirect evidence" of retaliation under "ordinary principles of proof." *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996) (internal quotations marks and citation omitted). When a plaintiff proceeding under ordinary principles of proof seeks to avert summary judgment in the moving party's favor, he must "produce direct evidence of a stated purpose to [retaliate] and/or [indirect] evidence of sufficient probative force to reflect a genuine issue of material fact." *Rhoads v. F.D.I.C.*, 257 F.3d 373, 391 (4th Cir. 2001) (internal quotations marks and citation omitted).

In the event that the plaintiff, like Hailey here, offers no such direct evidence of retaliation, the second method is the burden-shifting approach established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[3] Under this system of proof, the plaintiff must first set

---

[3] Although *McDonnell Douglas* involved a claim of racial discrimination in hiring, the case's burden-shifting framework has been held applicable in the context of disability discrimination and retaliation. *See Perry v.*

forth a prima facie case of retaliation. Once the plaintiff has established his prima facie case by a preponderance of the evidence, "a presumption of illegal [retaliation] arises, and the burden of production shifts to the employer, 'who must articulate a [non-retaliatory] reason for the [adverse employment action].'" *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011) (quoting *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993)). If the defendant fails to meet the burden of producing "evidence which, *taken as true,* would *permit* the conclusion that there was a [non-retaliatory] reason for the adverse action," and the plaintiff has proved a prima facie case, "the court must award judgment to the plaintiff as a matter of law." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993). However, "[i]f the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted," *Burdine*, 450 U.S. at 255, and "the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant," and "simply drops out of the picture," *Hicks*, 509 U.S. at 510–11.

The United States Court of Appeals for the District of Columbia Circuit has described the inquiry somewhat differently, though cogently, as such:

> In a [retaliation] suit where an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-[retaliatory] reason for the decision, the district court need not—*and should not*—decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*. Rather, in considering an employer's motion for summary judgment . . . in those circumstances, the district court must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-[retaliatory] reason was not the actual reason and that the employer intentionally [retaliated] against the employee on the basis of [protected conduct]?

*Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008).

---

*Computer Sci. Corp.*, 429 F. App'x 218, 219–20 (4th Cir. 2011) ("Disability discrimination and retaliation claims under the ADA and Rehabilitation Act are evaluated under the [*McDonnell Douglas*] 'pretext' framework.").

Case 6:11-cv-00022-NKM-RSB    Document 27    Filed 04/19/12    Page 9 of 16    Pageid#: 192

## C. Hailey's Retaliation Claims

To establish a prima facie case of retaliation, the plaintiff must show: "(1) that he has engaged in protected conduct; (2) that he suffered an adverse action subsequent to engaging in protected conduct; and (3) that 'there was a causal link between the protected activity and the adverse action.'" *Lyons v. Shinseki*, No. 11-1361, 2011 WL 5588836, at *3 (4th Cir. Nov. 17, 2011) (quoting *Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006)). Additionally, before filing a lawsuit under the Rehabilitation Act, a federal employee must exhaust all available administrative remedies. *See* 42 U.S.C. § 2000e-16(c); *Medlock v. Rumsfeld*, 336 F. Supp. 2d 452, 462 (D. Md. 2002).

In the case at hand, Hailey alleges that the postal service retaliated against him by "imposing discipline against him for missing work, which absences were due to his disabilities," "refusing to pay [him] amounts rightfully owed to him," and "refusing to pay him sums due in retaliation for his protected activity." Compl. ¶¶ 12, 14. By claiming that he was retaliated against for missing work, Hailey thus asserts that his periodic absences qualify as one form of protected conduct. However, even if I were to assume that his absences could qualify as protected conduct, Hailey nevertheless failed to include this particular form of protected activity in his EEO complaints. In those complaints, the retaliatory conduct alleged by Hailey was the postal service's issuance of the letter of demand, the collection of a portion of the money advanced to him, and the refusal to give him a check in the amount of $1,532.00. In other words, the disciplinary actions taken by the postal service (in the form of suspensions and, ultimately, termination of Hailey's employment) in response to Hailey's absences from work were not a part of his EEO complaints. Moreover, these disciplinary actions are not reasonably related to the charges of retaliation found in his EEO complaints. Therefore, Hailey's claim that the postal

- 10 -

Case 6:11-cv-00022-NKM-RSB   Document 27   Filed 04/19/12   Page 10 of 16   Pageid#: 193

service retaliated against him for disability-related absences by imposing forms of discipline must be barred as not having been administratively exhausted. Accordingly, the only instances of retaliation with which Hailey is left concern the postal service's issuance of the letter of demand and its efforts to collect the advance that Hailey has pledged to repay.

In his complaint, Hailey does not spell out precisely which activities he is alleging should be deemed protected conduct and, correspondingly, the activities for which the postal service allegedly retaliated against him. Liberally construing his complaint,[4] however, I infer that Hailey is claiming the following as his protected conduct: his submission of the February 5, 2008 medical certification for light duty work assignments; his February 20 and 25, 2008 letters requesting light duty work assignments; his May 6, 2008 contact with a postal service EEO counselor; his June 13, 2008 EEO complaint; and his September 19, 2009 EEO complaint.

"To be engaged in a protected activity under the Rehabilitation Act, plaintiff[ ] must have been protesting what [he] perceived as discriminatory acts by [his employer]." *Webster v. Henderson*, 32 F. App'x 36, 44 (4th Cir. 2002). I observe that it is far from clear that the first two examples of allegedly protected activity that I have construed—namely, Hailey's submission of the medical certification and his requests for light duty work assignments—can even fall within this definition of protected activity. *See* 42 U.S.C. § 12203(a) ("No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in an manner in any investigation, proceeding, or hearing under this chapter."); *Balazs v. Liebenthal*, 32 F. 3d 151, 158 (4th Cir. 1994) (holding that expressions of discrimination, even where not true, constitute protected activity); *Armstrong v. Index Journal Co.*, 647 F.2d 441, 448 (4th Cir. 1981) ("[B]ehavior need not rise to the level of formal charges

---

[4] Although he has since retained counsel, Hailey was proceeding *pro se* when he filed his complaint.

of discrimination"). However, because these two instances tangentially relate to Hailey's inability to obtain workplace accommodations that he desired, and because he refers elsewhere in his complaint to the fact that the failure to provide these accommodations amounted to discrimination on the part of the postal service, I will assume, for the purposes of argument, that all five of the aforementioned examples fall within the definition of protected activity.

Even conceding that these instances represent the protected activities claimed by Hailey, Defendant nonetheless argues that he is entitled to summary judgment because there are insufficient causal links between these activities and the allegedly adverse employment action taken by the postal service. Ultimately, even after taking all inferences in Hailey's favor, I agree.

"[A] causal connection for purposes of demonstrating a prima facie case exists where the employer takes adverse employment action against an employee shortly after learning of the protected activity." *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004). However, as a general matter, "the passage of time alone cannot provide proof of causation unless the temporal proximity between an employer's knowledge of protected activity and an adverse employment action was very close." *Lyons*, 2011 WL 5588836, at *4 (internal quotations marks and citation omitted). Thus, "a lengthy time lapse between a protected activity and an adverse employment action can negate an inference of causal connection." *Id.* (citing *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998)).

When Hailey received his $1,196.00 salary advance, which had been authorized on March 13, 2008, he agreed to repay the amount when he received a later paycheck. Indeed, the form he signed includes the following language: "I hereby certify that I have received the above amount and will repay that amount upon receipt of my salary check." On May 8, 2008, Hailey received a paycheck and at that time repaid $700 of his advance. On May 29, 2008, the

- 12 -

Case 6:11-cv-00022-NKM-RSB Document 27 Filed 04/19/12 Page 12 of 16 Pageid#: 195

Lynchburg postmaster issued the letter of demand to Hailey, seeking the remaining $496.00 that Hailey had been advanced. Defendant contends that this letter of demand was a completely separate and distinct event from Hailey's protected activities, and I agree; the postal service's efforts to recoup the money advanced to Hailey, which included the issuance of the letter of demand, were obviously geared toward collecting a debt that Hailey had promised to pay back.[5] Thus, a reasonable trier of fact could not find these efforts on the part of the postal service to be a retaliatory response to Hailey's submission of the medical certification and request for light duty work assignments, both of which, I add, took place *after* the carrier annex's management had already decided to terminate Hailey's employment on the basis of his unexplained absences.

This conclusion is only buttressed by the temporal gap between most of the instances of purportedly protected activity and the allegedly retaliatory employment action. For example, Hailey presented the medical certification on February 5, 2008, and he submitted requests for light duty work assignments on February 20 and 25, 2008. However, the letter of demand was not issued until over three months later on May 29, 2008. While this span of time between the protected activity and the adverse employment action standing alone is probably insufficiently lengthy to negate the causal link as a matter of law, *see Hooven-Lewis v. Caldera*, 249 F.3d 259, 278 (4th Cir. 2001) ("A six month lag is sufficient to negate any inference of causation."), its

---

[5] Moreover, I note that it is unclear whether the letter of demand even qualifies as an adverse employment action. As a general matter, in the context of discrimination claims, "[a]n adverse employment action is a discriminatory act that 'adversely affect[s] the terms and conditions or benefits of the plaintiff's employment.'" *Madock v. McHugh*, No. 10-02706, 2011 WL 3654460, at *15 (D. Md. Aug. 18, 2011) (internal quotation marks and citations omitted). However, the Supreme Court of the United States has held that at least in certain contexts, for conduct to be considered an "adverse action" in a retaliation claim, it need not materially alter the terms and conditions of employment in order to state a viable claim. *Burlington N. & Santa Fe R.R. Co. v. White*, 548 U.S. 53, 67 (2006). Rather, in the retaliation setting, the Court stated, the plaintiff must allege that: (1) he was subjected to an action that a reasonable employee would have found materially adverse, and (2) the action could dissuade a reasonable employee from making or supporting a charge of discrimination. *Id.* at 67–68. As the United States Court of Appeals for the Fourth Circuit has observed, there is a disagreement, which it has declined to resolve in a reported case, over whether *Burlington* applies to the claims of federal employees. *See Ziskie v. Mineta*, 547 F.3d 220, 229 (4th Cir. 2008). Similarly, I do not reach this issue, for I find that Hailey's retaliation claims fail in any event because he cannot demonstrate that the adverse employment actions he alleges were causally connected to his purportedly protected conduct.

length is certainly probative of the lack of causality and serves to support my conclusion that a reasonable trier of fact could not find that the facts here support even an inference of retaliation.

And of course, the letter of demand was issued two weeks before Hailey filed his first EEO complaint, so it could not qualify as an adverse employment action with respect to that asserted example of protected conduct. Similarly, Defendant's refusal to give Hailey the $1,532.00 check on June 12 or 15, 2009, which Hailey raised in his second EEO complaint, took place a full year after Hailey filed his first EEO complaint. As such, it simply cannot be causally connected to any of the protected conduct in which Hailey claims to have engaged. *See id.*[6]

The only instance of allegedly protected conduct that is, temporally, proximate to a purportedly adverse employment action is Hailey's initial contact with a postal service EEO counselor on May 6, 2008, which took place a few weeks before the issuance of the letter of demand. While these events are undoubtedly close together in time, temporal proximity alone is not enough to establish retaliation. Indeed, the letter of demand was issued in order to obtain money that Hailey owed to the postal service and which he had promised to repay nearly two months *before* he contacted the EEO counselor. Further, and perhaps even more fundamentally, Hailey has not alleged that management at the carrier annex or the postmaster in Lynchburg, who decided to issue the letter of demand, were even aware that Hailey had spoken to the EEO counselor. And if they were not aware that Hailey had contacted the EEO counselor, the issuance of the letter of demand could not be a form of retaliation for doing so. *See Shields v. Fed. Express Corp.*, 120 F. App'x 956, 962 (4th Cir. 2005) ("A plaintiff claiming retaliation

---

[6] I observe that "[i]n cases where temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus." *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) (internal quotation marks and citations omitted). "Specifically, evidence of recurring retaliatory animus during the intervening period can be sufficient to satisfy the element of causation." *Id.* In the case at hand, however, Hailey has offered absolutely no evidence of such "recurring retaliatory animus." Therefore, a reasonable trier of fact could not, in the absence of temporal proximity, find any alternative evidence of implicit retaliatory motivation on the part of the postal service in this case.

- 14 -

must establish that the employer had knowledge of the protected activity in order for its subsequent adverse employment actions to be retaliatory."); *Luckie v. Ameritech Corp.*, 389 F.3d 708, 715 (7th Cir. 2004) ("[A]n employer cannot retaliate when it is unaware of any complaints" of illegal employment practices). What is more, even if management and the postmaster were aware that Hailey had contacted the EEO counselor, their mere knowledge of his protected activity is insufficient "'evidence of retaliation to counter substantial evidence of legitimate reasons' for adverse personnel action against [him]." *Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994) (quoting *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989)).

Ultimately, Hailey has offered no probative evidence to demonstrate that the post office's legitimate reason for issuing the letter of demand and withholding certain monies—that is, to recoup the debt Hailey owed and to comply with the terms of the settlement entered into between the post office and Hailey's union—was merely a pretext for retaliation. In other words, there is no evidence to support the notion that the purportedly retaliatory conduct committed by Defendant was carried out because the protected conduct in which Hailey claims to have engaged.[7] As the D.C. Circuit succinctly put it, "the district court must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-[retaliatory] reason was not the actual reason and that the employer intentionally [retaliated] against the employee on the basis of [protected conduct]?" *Brady*, 520 F.3d at 494. Here, that question must be answer in the negative. Accordingly, Defendant is entitled to summary judgment in his favor with regard to Hailey's retaliation claims.

---

[7] To the extent Hailey believes that the letter of demand was issued in error or that the amount being sought by the postal service was inaccurate, I note that neither ground is sufficient, without more, to demonstrate reprisal by Defendant.

- 15 -

## IV. Conclusion

For the aforementioned reasons, Defendant's motion for summary judgment shall be granted in part as it concerns Hailey's retaliation claims. An appropriate order accompanies this memorandum opinion.

The Clerk of the Court is hereby directed to send a certified copy of this memorandum opinion and the accompanying order to all counsel of record.

Entered this 19th day of April, 2012.

                                                  NORMAN K. MOON
                                                  UNITED STATES DISTRICT JUDGE

Case 6:11-cv-00022-NKM-RSB   Document 27   Filed 04/19/12   Page 16 of 16   Pageid#: 199