CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

JUL 3 0 2012

JULIA C. DUDLEY, CLERK
BY: _Pam Coleman_
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
### LYNCHBURG DIVISION

| | |
|---|---|
| STACEY HAILEY, *Plaintiff,* | CASE NO. 6:11-cv-00022 |
| v. | MEMORANDUM OPINION |
| PATRICK R. DONAHOE, POSTMASTER GENERAL & CHIEF EXECUTIVE OFFICER, UNITED STATES POSTAL SERVICE, *Defendant.* | JUDGE NORMAN K. MOON |

This matter is before the Court upon a second motion for summary judgment filed by Patrick Donahoe ("Defendant"). Before addressing the merits of the motion, a brief restatement of this case's procedural history is in order. After conducting a hearing on April 13, 2012, I entered an order in which, *inter alia*, I denied in part Defendant's first motion for summary judgment as moot with respect to claims of disability discrimination asserted by Stacey Hailey ("Plaintiff") upon which I decided to permit further discovery. However, on April 19, 2012, I granted in part that original motion for summary judgment as it concerned Plaintiff's retaliation claims. Shortly thereafter, on April 27, 2012, Plaintiff filed an amended complaint. On June 18, 2012, Defendant filed the instant motion for summary judgment upon which I conducted a hearing on July 18, 2012. For the reasons that follow, I will grant Defendant's motion.

# I. BACKGROUND

Until the spring of 2008, Plaintiff worked for the United States Postal Service (the "postal service") as a letter carrier at the carrier annex in Lynchburg, Virginia.[1] Plaintiff alleges that, in 1999, he began experiencing pain in his knees and legs for which he sought treatment. In 2003, Plaintiff had surgery on his left knee to repair a torn meniscus. In 2004, Plaintiff had surgery on his back to remedy pain that he contends resulted from carrying mail bags during the course of his employment. Plaintiff further asserts that, in 2006, Dr. Robert Sydnor ("Dr. Sydnor") determined him to be permanently disabled; however, Plaintiff neither provides documentation to substantiate this conclusion nor alleges that he informed the postal service about it. According to his amended complaint, Plaintiff suffers from "Chondromalacia Patellae, postaminect synd-lumbar degenerative disc disease, sciatica, herniated disc, cervical degenerative disc-disease, meniscus tear in the left knee, and radiculopathy." Am. Compl. ¶ 11. Additionally, Plaintiff claims that he suffers from chronic back pain and neck conditions that "restrict him to walking no more than four hours per day, require[] him to alternate sitting and standing for 30 minutes at a time, limit[] him to lifting items not exceeding 40 lbs., and limit[] his ability to bend, stoop or squat." Am. Compl. ¶ 12. Finally, Plaintiff maintains that he also suffers from and is medically treated for depression.

According to Plaintiff, he suffered the injuries that led to the aforementioned restrictions during the course of his employment with the postal service. However, he does not specify how or exactly when he sustained the injuries. Allegedly, Plaintiff informed management in Lynchburg of his injuries, and, for an unspecified period of time, Plaintiff claims that the postal

---

[1] The parties dispute precisely when Plaintiff began his employment with the postal service. In his amended complaint, Plaintiff alleges that he started working for the postal service on December 12, 1992, but in his answer, Defendant contends that Plaintiff's employment began on December 11, 1993. In any event, the exact date is immaterial to the resolution of the motion presently before me.

service provided him with assignments that accommodated his restrictions on walking and lifting. Further, Plaintiff maintains that the postal service periodically gave him leave from work in order to seek treatment for his conditions. However, at some unidentified point in time, Plaintiff alleges that the postal service stopped making accommodations for him and instead started disciplining him for not being able to perform his employment responsibilities. According to Plaintiff, he continued to request reasonable accommodations for his limitations up to and through the time the postal service fired him.

Defendant's account, which is supported by multiple exhibits and a declaration, differs markedly. First, Defendant concedes that, in December 2003 and October 2004, the postal service placed Plaintiff on light duty pursuant to the postal service's collective bargaining agreement ("CBA") with Plaintiff's labor union, the National Association of Letter Carriers ("NALC"). However, Defendant notes that the postal service did not make a finding that Plaintiff was disabled, and accordingly, it did not provide Plaintiff with a "reasonable accommodation" as that term is defined.

Separately, Defendant states that, during 2007 and 2008, Plaintiff was absent from work for lengthy, unscheduled periods of time. The postal service disciplined Plaintiff for these absences in the following ways:

- On August 3, 2007, the postal service issued Plaintiff a letter of warning as a result of several unscheduled absences from work between June 8, 2007 and July 17, 2007;

- On November 20, 2007, the postal service issued Plaintiff a seven-day, no-time-off suspension as a result of absences from work between September 4, 2007 and October 6, 2007; and

3

- On January 24, 2008, the postal service issued Plaintiff a fourteen-day, no-time-off suspension as a result of absences from work between November 20, 2007 and January 16, 2008.[2]

The CBA between the postal service and the NALC provides for a disciplinary and grievance arbitration process, a component of which is an employee's opportunity to respond to disciplinary charges. Accordingly, on February 2, 2008, Plaintiff's supervisor conducted a pre-disciplinary interview prior to initiating Plaintiff's removal for unscheduled absences from work. At the interview, despite being afforded an opportunity to do so, Plaintiff did not offer any explanation for his unauthorized absences.

On February 5, 2008, Plaintiff's physician at the University of Virginia faxed a medical certification to the postal service. The medical certification stated that Plaintiff could return to work for light duty through February 18, 2008 with no lifting of more than ten pounds and with other restrictions on bending, standing, and squatting. The medical certification also stated that these restrictions would expire on February 18, 2008. On February 25, 2008, the same physician eased Plaintiff's restrictions to "no climbing, no kneeling, 40 pound lifting restriction," and noted that these new restrictions would expire on June 5, 2008. Def.'s Mem. Supp. Mot. Summ. J., Ex. E-1. According to Defendant, these restrictions would have precluded Plaintiff from carrying any of the mail routes originating at the Lynchburg carrier annex. Moreover, the carrier annex only had one full-time light duty position, which was already filled.

On February 9, 2008, Plaintiff's supervisor sent a request to draft a notice of removal for Plaintiff. The manager of the carrier annex concurred with this request. According to

---

[2] The notices issued on November 20, 2007 and January 24, 2008 both state, *inter alia*, "that future deficiencies such as outlined above will result in more severe disciplinary action being taken against you including a lengthier suspension, reduction in grade and/or pay, or removal from the U.S. Postal Service." Def.'s Mem. Supp. Mot. Summ. J., Ex. C, D.

Case 6:11-cv-00022-NKM-RSB   Document 42   Filed 07/30/12   Page 4 of 22   Pageid#: 481

Defendant, Plaintiff only sought medical attention for his depression on February 11, 2008, after the decision to terminate Plaintiff's employment had already been made. On February 18, 2008, a psychiatrist, Dr. George Luedke ("Dr. Luedke"), wrote out a note, which Plaintiff purports to have presented to the postal service, stating that Plaintiff was under his care. The note also reads: "Please excuse his recent absence (11/1/07 – 2/1/08) due to depression. He is very glad to have been able to return to work as of 2/1/08. He is released to return to work as of February 1, 2008." Pl.'s Mem. Opp'n Mot. Summ. J., Ex. E. Plainly, Dr. Luedke wrote this note after Plaintiff's pre-disciplinary interview and after the postal service initiated his removal.

On February 19, 2008, the postal service issued Plaintiff a formal notice of removal, which cited his unsatisfactory attendance record. On February 20 and 25, 2008, Plaintiff sent written requests for light duty to the Lynchburg postmaster. However, the Lynchburg postmaster denied these requests based on the fact that Plaintiff's supervisors had already decided to remove him as well as the fact that the one light duty position at the carrier annex was filled at the time.

Pursuant to the CBA, Plaintiff pursued a grievance with respect to his removal. On April 17, 2008, the grievance was resolved upon the conclusion that there had been no violation of the CBA by the postal service and that Plaintiff had been removed for just cause. On May 6, 2008, Plaintiff contacted a postal service Equal Employment Opportunity ("EEO") counselor for the first time, and on June 13, 2008, Plaintiff completed a formal EEO complaint in which he alleged that the postal service had discriminated against him on February 19 and April 7, 2008 insofar as it had been aware of his disabilities but refused to make accommodations. Plaintiff's claim was accepted for EEO investigation.

On July 19, 2010, the administrative law judge dismissed Plaintiff's request for a hearing on his June 13, 2008 EEO complaint because he did not comply with the postal service's

discovery requests. On September 1, 2010, the postal service issued its final agency decision. Plaintiff appealed the adverse decision to the Office of Federal Operations within the EEOC. In an opinion dated March 30, 2011, the EEOC upheld the postal service's final agency decision. Thereafter, on July 15, 2011, Plaintiff's request for reconsideration was denied. This action ensued.

According to his deposition testimony, Plaintiff remained unemployed for approximately one year following his termination from employment with the postal service. However, he eventually obtained employment with a motor vehicle dealership where he works as a salesman six days a week for roughly twelve hours per day. Nevertheless, Plaintiff contends that he was, and remains, a qualified person with a disability, a qualified person perceived to have a disability, and/or a qualified person with a history of disability within the meaning of the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 29 U.S.C. § 701, *et seq.*. Further, Plaintiff asserts that, prior to his removal, he could have performed his job with a reasonable accommodation. Thus, Plaintiff alleges that the postal service's actions constitute unlawful discrimination in violation of the Rehabilitation Act.


## II. LEGAL STANDARD

Summary judgment should be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (citations omitted). "As

6

to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). If the nonmoving party bears the burden of proof, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party shows such an absence of evidence, the burden shifts to the nonmoving party to set forth specific facts illustrating genuine issues for trial. *See* Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324. The trial court has an "affirmative obligation" to "prevent 'factually unsupported claims [or] defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 323–24).

## III. Discussion

### A. The Rehabilitation Act

Plaintiff brings this action under the Rehabilitation Act, which governs disability discrimination in federal employment. It is well-established that, notwithstanding the absence of an express private right of action in the Rehabilitation Act, individuals may sue to enforce its provisions. *See Pandazides v. Va. Bd. of Educ.*, 13 F.3d 823, 828 (4th Cir. 1994). In order to determine whether a federal employer has discriminated under the Rehabilitation Act, courts employ the same standards set out under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111, *et seq. See Myers v. Hose*, 50 F.3d 278, 281 (4th Cir. 1995); *Madock v.*

7

*McHugh*, No. 10-02706, 2011 WL 3654460, at *13 (D. Md. Aug. 18, 2011). Thus, in order to establish a violation of the Rehabilitation Act, a federal employee must prove: "(1) that he has a disability; (2) that he is otherwise qualified for the employment . . . in question; and (3) that he was excluded from the employment . . . due to discrimination . . . on the basis of the disability." *Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1265 (4th Cir. 1995).[3]

## B. Methods of Proof

As a general matter, there are two means by which a plaintiff may prove intentional employment discrimination. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004). The first of these methods is to offer "direct or indirect evidence" of discrimination under "ordinary principles of proof." *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996) (citation and internal quotations marks omitted). When a plaintiff proceeding under ordinary principles of proof seeks to avert summary judgment in the moving party's favor, he must "produce direct evidence of a stated purpose to discriminate and/or [indirect] evidence of sufficient probative force to reflect a genuine issue of material fact."

---

[3] In his amended complaint, Plaintiff invokes sections 501 and 504 of the Rehabilitation Act. Section 501 requires federal agencies, including the postal service, to implement programs to facilitate "the hiring, placement, and advancement of individuals with disabilities . . . ." 29 U.S.C. § 791(b). In *Lane v. Pena*, 518 U.S. 187, 193 (1996), the Supreme Court of the United States interpreted section 501 as prohibiting discrimination by the federal government on the basis of disability. Section 504 of the Rehabilitation Act states that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability, be excluded from the participation in, or denied benefits of, or be subjected to discrimination . . . under any program or activity conducted by any Executive agency or by the United States Postal Service." 29 U.S.C. § 794(a). To date, the United States Court of Appeals for the Fourth Circuit has not explicitly decided under which of these sections a disabled federal employee alleging discrimination against a federal agency should bring suit. *See Madock v. McHugh*, No. 10-02706, 2011 WL 3654460, at *13 n.23 (D. Md. Aug. 18, 2011); *Figueroa v. Geithner*, 711 F. Supp. 2d 562, 569 n.7 (D. Md. 2010). Similarly, it is unclear in the Fourth Circuit whether sections 501 and 504 employ the same standard of causation. *See Madock*, 2011 WL 3654460, at *13 n.23. Section 504 proscribes discrimination "solely by reason of" disability, 29 U.S.C. § 794(a), whereas section 501 incorporates the causation standard of the ADA, which does not include the "solely by" language, 29 U.S.C. § 791(g). However, the resolution of Plaintiff's discrimination claim does not turn on which causation standard applies; my ruling on Defendant's motion for summary judgment would be the same, regardless of which section authorizes Plaintiff's claim. *See Lerner v. Shinseki*, No. ELH-10-1109, 2011 WL 2414967, at *20 n.21 (D. Md. June 10, 2011); *Figueroa*, 711 F. Supp. 2d at 569 n.7.

*Rhoads v. F.D.I.C.*, 257 F.3d 373, 391 (4th Cir. 2001) (citation and internal quotations marks omitted).

When, as here, the plaintiff cannot present such evidence of discrimination, the second method is the burden-shifting approach established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[4] Under this system of proof, the plaintiff must first establish a prima facie case of discrimination by a preponderance of the evidence, *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996), which generally means showing that, despite being qualified for employment, the employer took an adverse action against him "under circumstances which give rise to an inference of unlawful discrimination," *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Once the plaintiff has established his prima facie case, "a presumption of illegal discrimination arises, and the burden of production shifts to the employer, 'who must articulate a non-discriminatory reason for the [adverse employment action].'" *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011) (quoting *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993)). "If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted," *Burdine,* 450 U.S. at 255, and "the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant," and "simply drops out of the picture," *Hicks,* 509 U.S. at 510–11. At this point, it falls on the plaintiff to raise a genuine issue as to whether "the proffered reason was not the true reason for

---

[4] Although *McDonnell Douglas* involved a claim of racial discrimination in hiring, the case's burden-shifting framework has been held applicable in the context of disability discrimination. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 49–50 & n.3 (2003) (applying the methodology to disability discrimination in employment under the ADA); *Hooven-Lewis v. Caldera*, 249 F.3d 259, 266–68 (4th Cir. 2001) (applying the framework to a federal employee's claim of disability discrimination in employment under the Rehabilitation Act).

the employment decision," *Burdine*, 450 U.S. at 256, and was but a pretext for unlawful discrimination, *Evans*, 80 F.3d at 959.[5]

If, however, the defendant fails to meet the burden of producing "evidence which, *taken as true,* would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action," and the plaintiff has proved a prima facie case, "the court must award judgment to the plaintiff as a matter of law." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993). "This is because a legal presumption of intentional discrimination has been established." *Lerner v. Shinseki*, No. ELH-10-1109, 2011 WL 2414967, at *13 (D. Md. June 10, 2011) (citing *id.* at 510 n.3). However, it is important to note that, under the *McDonnell Douglas* method of proof, "[t]he ultimate burden of persuasion . . . never 'shifts' from the plaintiff." *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 n.2 (4th Cir. 1989) (citing *Burdine*, 450 U.S. at 253).

Plainly, applying the *McDonnell Douglas* approach can be a difficult endeavor. For that reason, the United States Court of Appeals for the Fourth Circuit has instructed courts to "resist the temptation of becoming so entwined in the intricacies of the proof scheme that they forget that the scheme exists solely to facilitate determination of 'the ultimate question of discrimination *vel non.*'" *Proud v. Stone*, 945 F.2d 796, 798 (4th Cir. 1991) (quoting *United States Postal Serv. Bd. of Govs. v. Aikens*, 460 U.S. 711, 714 (1983)).[6]

---

[5] "To establish pretext, a plaintiff must present evidence to allow a reasonable juror to find that (1) the legitimate, nondiscriminatory reasons were unworthy of credence and (2) unlawful discrimination was the actual motive for the decision." *Figueroa*, 711 F. Supp. 2d at 573 (citations and internal quotation marks omitted).

[6] The United States Court of Appeals for the District of Columbia Circuit has remarked that, in considering an employer's motion for summary judgment, a court's "inquiry into the prima facie case is usually misplaced" and "a largely unnecessary sideshow." *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493, 494 (D.C. Cir. 2008). Accordingly, the D.C. Circuit has distilled the relevant inquiry upon an employer's motion for summary judgment as follows:

> In a [discrimination] suit where an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision, the district court need not—*and should not*—decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*. Rather, in considering an employer's motion for < *continued . . .* >

10

## C. Plaintiff's Disability Discrimination Claim

To reiterate, in order to obtain relief for disability discrimination, Plaintiff must show that: (1) he is disabled; (2) he was otherwise qualified for the employment in question; and (3) he suffered an adverse employment action on the basis of the disability. *See Doe*, 50 F.3d at 1265. Defendant contends that Plaintiff cannot, as a matter of law, establish any of these three elements. For the reasons set forth in the discussion that follows, I agree.

### 1. Plaintiff has failed to show that he is "disabled" as defined under the ADA

As mentioned, for purposes of the Rehabilitation Act, the ADA's definition of "disabled" applies.[7] Under the ADA, disability is defined as either: "(A) a physical or mental impairment that substantially limits one or more . . . major life activities . . .; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).[8] In the instant matter, Plaintiff has clearly alleged that he suffers from a variety of physical and psychological impairments. However, an impairment, standing alone, is not sufficient to establish a disability under the ADA. Rather,

---

< *. . . continued* > summary judgment . . . in those circumstances, the district court must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of [a protected classification]?

*Id.* at 494. Although I concede that there is compelling logic behind this distillation, as I further discuss in note 11, *infra*, I state the obvious, which is that, regardless of *Brady*'s merits, it is the precedent of the Fourth Circuit that guides and binds my decisionmaking.

[7] It should be noted that Congress enacted significant amendments to the ADA that became effective on January 1, 2009. However, Congress did not expressly intend for the changes it made to apply retroactively. Accordingly, the pre-amendment version of the ADA is relevant for the purposes of this case in light of the fact that the events giving rise to Plaintiff's suit occurred prior to 2009. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 270 (1994) ("Since the early days of this Court, we have declined to give retroactive effect to statutes burdening private rights unless Congress had made clear its intent.").

[8] "The fact that an employer is aware of an employee's impairment, without more, is 'insufficient to demonstrate either that the employer regarded the employee as disabled or that perception caused the adverse employment action.'" *Haulbrook v. Michelin N. Am., Inc.*, 252 F.3d 696, 703 (4th Cir. 2001) (quoting *Kelly v. Drexel Univ.*, 94 F.3d 102, 109 (3d Cir. 1996)).

11

the employee also must prove the impairment substantially limits a major life activity. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999). The disability analysis is therefore "an individualized inquiry, particular to the facts of each case." *EEOC v. Sara Lee Corp.*, 237 F.3d 349, 352 (4th Cir. 2001). The substantial limitation requirement "sets a threshold that excludes minor impairments from coverage." *Heiko v. Colombo Sav. Bank*, 434 F.3d 249, 257 (4th Cir. 2006).

*Lyons v. Shinseki*, No. 11-1361, 2011 WL 5588836, at *2 (4th Cir. Nov. 17, 2011). Thus, Plaintiff must show that his impairments *substantially* limit a *major* life activity.

In his deposition testimony, Plaintiff described his present physical impairments as consisting of: (1) a bad left knee which causes him to lean to one side, not to be able to run, and only walk short distances, *see* Plaintiff Dep. 16:24 – 17:6; (2) bulging discs in his lower back that limit his ability to bend over and lift heavy objects, *see id.* at 17:16 – 18:15; and (3) a compressed cervical spine which, at one point, required the insertion of metal spacers in his upper neck that today cause him pain and prevent him from jogging, *see id.* at 18:25 – 19:24. Plaintiff described his mental impairment as "depression because I worry about everything." *Id.* at 20:10–11. Significantly, Plaintiff testified that his present physical and mental impairments are the same as his impairments when he lost his postal service job. *See id.* at 24:24 – 25:2. When specifically asked how he believes that he is disabled, Plaintiff replied: "I believe I'm disabled because of my spine, my knees, and my mental and physical conditions. I mean, I hurt every day. I stress out over stuff every day. I mean, it's just -- I have to suffer every day of my life." *Id.* at 28:2–6. When asked why he believed he was disabled when he lost his job with the postal service, Plaintiff testified: "Because my health was not getting no better. I was at work trying to do the best I can with restrictions and stuff like that, and I just -- I knew in my heart and in my ways that my body felt, that I won't get no better." *Id.* at 30:17–20. Counsel for Defendant then asked Plaintiff how his mental and physical impairments limited a major life function at the time the postal service terminated his employment, to which Plaintiff responded:

12

> The mental part, because of my health problems and stuff like that on my back and my legs and stuff like that, and the mental problems, they just affected my life where I didn't want to do nothing, I didn't want to get up, I didn't know what was going on in life, to a point. I was just down. Like I didn't want to go outside, I didn't want to be around people. I didn't want to see people.

*Id.* at 33:1–8.

In determining whether an impairment is substantially limiting, "courts may consider the 'nature and severity of the impairment,' the 'duration or expected duration of the impairment,' and the 'permanent or long term impact' of the impairment." *Pollard v. High's of Balt., Inc.*, 281 F.3d 462, 467–68 (4th Cir. 2002) (quoting 29 C.F.R. § 1630.2(j)(2)). The Supreme Court of the United States has stated that the terms "substantially" and "major" must "be interpreted strictly to create a demanding standard for qualifying as disabled . . . ." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197 (2002) (overruled on other grounds by the ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 353 (2008)); *accord Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 200 (4th Cir. 1997) ("The ADA simply was not designed to protect the public from all adverse effects of ill-health and misfortune. Rather, the ADA was designed to assure that truly disabled, but genuinely capable, individuals will not face discrimination in employment because of stereotypes about the insurmountability of their handicaps."). On the basis of the briefs he has submitted and the arguments he presented at the hearing I conducted, the only major life activities that Plaintiff has arguably alleged to be limited by his impairments are working as a letter carrier and walking. I will address each in turn.

### i. Major Life Activity of Working

The Fourth Circuit has assumed, without deciding, that working is a major life activity. *Taylor v. Fed. Express Corp.*, 429 F.3d 461, 463 (4th Cir. 2005) (citations omitted). Notwithstanding this assumption, "the central inquiry must be whether the claimant is unable to perform the variety of tasks central to most people's daily lives, not whether the claimant is

13

unable to perform the tasks associated with [his] specific job." *Toyota*, 534 U.S. at 200–01.

Such a focus is fitting, for "the manual tasks unique to any particular job are not necessarily

important parts of most people's lives." *Id.* at 201. Indeed, "when the major life activity under

consideration is that of working, the statutory phrase 'substantially limits' requires, at a

minimum, that plaintiffs allege they are unable to work in a broad class of jobs." *Sutton v.*

*United Air Lines, Inc.*, 527 U.S. 471, 491 (1999). Consequently, "the impact of [the limitations

on a plaintiff's] ability to perform the manual tasks his job duties required, standing alone, is

insufficient to establish a substantial limitation on a major life activity." *Lyons*, 2011 WL

5588836, at *2.

    In his amended complaint, Plaintiff does not specify a range or class of jobs from which

he is precluded because of his physical or mental impairments. Rather, he states that he could

have continued to be employed by the postal service, impairments notwithstanding, had he been

offered the sort of light duty accommodations that he had previously been afforded earlier in his

employment with the postal service. And yet the inability to perform one's duties as a letter

carrier in Lynchburg does not, without more, qualify as a substantial limitation on a major life

activity as contemplated by the ADA. What is more, I observe Plaintiff's own admission that, as

of the date of his deposition, he had been working six days a week as a salesman at an auto

dealership for approximately three years. This fact buttresses my conclusion that Plaintiff's

impairments did not substantially limit his ability to work. *See Pollard*, 281 F.3d at 471

("[Plaintiff] immediately took a job with a car dealership when she left [defendant's

employment]. This reinforces our conclusion that [plaintiff] was not substantially limited in the

major life activity of working. In order to be substantially limited in the major life activity of

working, 'one must be precluded from more than one type of job, a specialized job, or a particular job of choice.'") (quoting *Sutton*, 527 U.S. at 491–92).

ii. Major Life Activity of Walking

Walking, a function integral to most people's lives, has been identified as a major life activity. *See Wilson v. Phoenix Specialty Mfg. Co.*, 513 F.3d 378, 385 (4th Cir. 2008); 29 C.F.R. § 1630.2(i)(1)(i). That being said, "[i]t is difficult, indeed perhaps not possible, to draw a bright line delineating the point at which a condition affecting an employee's ability to walk can be regarded as a disability within the ADA." *Kelly v. Drexel Univ.*, 94 F.3d 102, 108 (3d Cir. 1996); *see also Carbaugh v. Pangborn Corp.*, No. JFM-00-2719, 2001 WL 121769, at *3 (D. Md. Feb. 12, 2001) ("The precise point at which an impairment of an employee's ability to walk is considered a substantial limitation is not easily determined.").

With respect to his ability to walk, Plaintiff attaches two relevant exhibits to his response brief in opposition to Defendant's motion. One is a note from Dr. Sydnor, dated August 9, 2006, which states that Plaintiff "may walk 5 to 5 ½ hours a day when necessary." Pl.'s Mem. Opp'n Mot. Summ. J., Ex. A. The other is a NALC Family and Medical Leave Act form, signed by Dr. Sydnor and dated June 20, 2007, which prescribes a "permanent restriction of no more than 4 hours of walking per day." Pl.'s Mem. Opp'n Mot. Summ. J., Ex. D. Thus, it could reasonably be inferred that Plaintiff is not supposed to walk more than four hours per day. However, it should be noted that in neither document does Dr. Sydnor place a restriction on the distance that Plaintiff is permitted to walk. Additionally, it is significant that Plaintiff has not explicitly alleged that he provided either of these forms to his supervisors or management at the carrier annex.

15

Moreover, the restrictions imposed by Dr. Sydnor, which pre-dated Plaintiff's removal, are absent from the more recent medical certifications that Plaintiff's University of Virginia physician faxed to the postal service in February 2008. In fact, those medical certifications for light duty work—which were unambiguously of temporary duration—though they imposed certain other restrictions, did not impose restrictions on Plaintiff's walking. In other words, whereas Dr. Sydnor evidently considered restrictions on Plaintiff's walking to be imperative, by 2008, Plaintiff's physician at the University of Virginia saw no need to place limitations on Plaintiff's walking whatsoever.

On that basis alone, one could reasonably conclude that Plaintiff has presented insufficient evidence to substantiate his contention that he suffers from a substantial limitation on his ability to engage in the major life activity of walking. However, consultation of relevant case law only serves to confirm this conclusion. *See, e.g.*, *Wood v. Crown Redi-Mix, Inc.*, 339 F.3d 682, 686 (8th Cir. 2003) (finding that the evidence did not show a plaintiff's ability to walk was substantially limited where, among other things, he could only walk approximately one-quarter of one mile before having to stop to rest); *Talk v. Delta Airlines, Inc.*, 165 F.3d 1021, 1025 (5th Cir. 1999) (holding that a plaintiff who limped in part because one of her legs was shorter than the other was not substantially limited in the major life activity of walking because "moderate difficulty experienced while walking does not rise to the level of a disability"); *Penny v. United Parcel Serv.*, 128 F.3d 408, 414–17 (6th Cir. 1997) (determining that a plaintiff who limped and experienced pain when he walked up hills or steps was not substantially limited in the major life activity of walking because "moderate difficulty or pain experienced while walking does not rise to the level of a disability"); *Kelly*, 94 F.3d at 105–108 (finding that a plaintiff who limped, walked slowly while climbing stairs, and could not jog or walk for more than a mile was not

16

substantially limited in the major life activity of walking because "comparatively moderate restrictions on the ability to walk are not disabilities"); *Hamm v. Runyon*, 51 F.3d 721, 724–26 (7th Cir. 1995) (holding that a plaintiff with arthritis who had difficulty walking was not regarded as having a disability under the Rehabilitation Act); *Fink v. Richmond*, No. DKC 2007-0714, 2009 WL 3216117, at *7 (D. Md. Sept. 29, 2009) (deciding that "Plaintiff has not shown that she is substantially limited in the major life activity of walking. While Plaintiff's walking impairment is permanent, it is not sufficiently severe. Plaintiff's inability to walk at a fast pace constitutes a mere difference with the average person, not a considerable difference as required by the Rehabilitation Act and ADA."); *Gallimore v. Newman Machine Co.*, 301 F. Supp. 2d 431, 449 (M.D.N.C. 2004) (finding that a plaintiff was not substantially limited in his ability to walk in light of the fact that he could walk half a mile without pain, walk for recreation, had no medical limitations on the distance he could walk, and was able to climb some stairs without pain); *Stewart v. Weast*, 228 F. Supp. 2d 660, 662 (D. Md. 2002) (stating that "an inability to walk long distances or climb stairs does not in itself substantially limit the persons [sic] ability to walk within the meaning of the ADA."); *Puoci v. City of Chicago*, 81 F. Supp. 2d 893, 896–97 (N.D. Ill. 2000) (finding that a plaintiff who limped and who could not walk more than a mile and a half without pain was not substantially limited in his ability to walk); *Vass v. Riester & Thesmacher Co.*, 79 F. Supp. 2d 853, 860–61 (N.D. Ohio 2000) (determining that a plaintiff who was prone to losing his balance, had trouble walking up stairs, and experienced pain after standing for longer than thirty minutes was not substantially limited in his ability to walk); *Hoots v. Sara Lee Corp.*, No. 1:98CV00025, 1999 WL 1939252, at *3 (M.D.N.C. Mar. 12, 1999) (finding, as a matter of law, that a plaintiff was not disabled under the ADA even though her doctor opined that she was significantly limited in her ability to stand or walk continuously for

17

periods in excess of one hour); *but cf. EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 802 (7th Cir. 2005) (finding there was a genuine issue of material fact with respect to whether a plaintiff was substantially impaired in his ability to walk in light of the fact that she could not walk more than one city block without feeling numbness in her feet and one of her legs that effectively prevented her from walking any further); *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 435–36 (7th Cir. 2000) (reversing the district court's grant of summary judgment to an employer where the suing plaintiff suffered from neuropathy that interfered with her ability to walk from her workstation to the employee cafeteria or to the food court).

Even assuming the validity of the restrictions imposed by Dr. Sydnor and ignoring the absence of such restrictions from the medical certifications of his University of Virginia physician, I nevertheless find that reasonable jurors could not conclude that the inability to walk for more than four hours per day represents a *substantial* limitation on a major life activity. As such, even when viewed in the light most favorable to him, Plaintiff has failed to adduce "sufficient evidence from which a factfinder reasonably could conclude that the nature and severity of his [impairments] significantly restricted his ability to walk as compared with an average person in the general population." *Kelly*, 94 F.3d at 105.

Ultimately, on the basis of his allegations and the evidence he has presented to the Court, I find that Plaintiff has failed to show that he was disabled as that term is defined under the ADA. As such, Plaintiff cannot establish his prima facie case. Although my inquiry could end here, I will briefly address the remaining two elements of Plaintiff's prima facie case of disability discrimination.

18

2. <u>Plaintiff has failed to show that he is a "qualified individual" as defined under the ADA</u>

Under the ADA, a qualified individual is defined as one who, "with or without reasonable accommodation can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).[9] Thus, discrimination under the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual . . . , *unless* [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business . . . ." 42 U.S.C. § 12112(b)(5)(A) (emphasis added); *see also Gilbert v. Frank*, 949 F.2d 637, 642 (2d Cir. 1991) (stating that a reasonable accommodation "cannot mean elimination of any of the job's essential functions"). Of particular relevance to the case at hand is the Fourth Circuit's observation that the ADA "does not require an employer to reallocate essential job functions or assign an employee permanent light duty." *Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 F. App'x 314, 323 (4th Cir. 2011) (citation and internal quotation marks omitted).

"In addition to possessing the skills necessary to perform the job in question, an employee must be willing and able to demonstrate these skills by coming to work on a regular basis." *Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal.*, 31 F.3d 209, 213 (4th Cir. 1994). Indeed, if an employee is not coming to work, he "cannot perform *any* of his job functions, essential or otherwise." *Id.* (citation and internal quotation marks omitted). "Therefore, a regular and reliable level of attendance is a necessary element of most jobs," and accordingly, "[a]n

---

[9] Under the ADA, a "reasonable accommodation" may include:

    (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and

    (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9).

19

employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual protected by the ADA." *Id.*

Plaintiff alleges, and Defendant concedes, that prior to his removal, the postal service provide him with job accommodations. However, Defendant points out that these accommodations were supplied on the basis of the CBA between the postal service and the NALC, not on the basis of compliance with the ADA. In other words, the accommodations provided were not "reasonable accommodations" under 42 U.S.C. § 12111. Additionally, the restrictions recommended by Plaintiff's physician in February 2008 were unknown to his supervisors when they conducted Plaintiff's pre-disciplinary interview, the first step in the process of his removal.[10] When directly confronted at the interview about his unexplained, unscheduled absences, Plaintiff concedes that he supplied no explanation whatsoever. And although the medical certifications for light duty that Plaintiff's University of Virginia physician faxed to the postal service contained temporary work restrictions, they too failed to explain retroactively Plaintiff's absences or even attempt to excuse them. It is the series of absences upon which the postal service contends it based Plaintiff's dismissal. Plainly, Plaintiff could not perform his job without showing up at the carrier annex.

Separately, Defendant notes that even if the postal service had received Plaintiff's requests for light duty prior to the initiation of his termination, it would have been unable to fulfill his wishes because the postal service did not have an available light duty position that could accommodate Plaintiff's new work restrictions. *See Lamb v. Qualex, Inc.*, 33 F. App'x 49, 59 (4th Cir. 2002) ("The ADA does not . . . require an employer to create a new position as an

---

[10] It is worth noting that the first of the physician's medical certifications regarding light duty work was dated February 5, 2008, but was set to expire approximately two weeks later on February 18, 2008. In order to be a qualified individual under the ADA, the impact of Plaintiff's impairments "must also be permanent or long term." *Toyota*, 534 U.S. at 198 (citing 28 C.F.R. §§ 1630.2(j)(2)(ii)–(iii)). Plainly, such short-lived work restrictions would not qualify as long-term impacts.

Case 6:11-cv-00022-NKM-RSB   Document 42   Filed 07/30/12   Page 20 of 22   Pageid#: 497

accommodation to a disabled employee.") (citations omitted).   Plaintiff contends that the postal

service did have an available light duty position, but he bases this conclusion on the mere fact

that in previous years he had filled such a position.   Thus, Plaintiff offers no support for his

assertion that there was, in fact, an open light duty position at the time he was fired.   In the end,

Plaintiff has also failed to show that he is a qualified individual under the ADA.

### 3. The postal service removed Plaintiff for a non-discriminatory reason

Finally, Plaintiff maintains that he has fulfilled the last element of his prima facie case by

showing that the postal service terminated his employment.   In other words, Plaintiff argues that

he has shown the postal service took an adverse employment action against him.   To be sure,

being fired qualifies as an adverse employment action, and one would be hard pressed to identify

a clearer example of such.   However, Plaintiff must show not only that he suffered an adverse

employment action, but, importantly, he must also demonstrate that the basis of that action was

discriminatory.[11]   And yet Plaintiff has failed to do so by a preponderance of the evidence.   To

the contrary, the evidence makes it clear that the reason for Plaintiff's dismissal was his

extensive record of unscheduled (and unexplained) absences.   Indeed, no reasonable jury could

---

[11] As discussed in note 6, *supra*, the D.C. Circuit has confronted the confusion that the *McDonnell Douglas* framework often engenders and the misapplication of that method by the federal courts that sometimes results.   In *Brady*, the court observed that, by the summary judgment stage of employment discrimination cases, the employer has almost invariably asserted a legitimate, non-discriminatory reason for its adverse employment action.   520 F.3d at 493.   Accordingly, the court suggested, the district court should ignore whether the plaintiff has made out a prima facie case of discrimination and instead focus on whether a reasonable jury could find that the employer's stated reason for the adverse action was merely pretextual.   *Id.* at 494.   The court's prescription in *Brady* has appeal, for if it were to be followed in a case such as the one presently before me, it would permit the district court to jump right to the heart of the inquiry into whether the employer intentionally discriminated *vel non*.   Moreover, it might allow the district court to avoid a problem cogently described by the court in *Figueroa*.   In that case, the court observed that, while the Fourth Circuit has described the third prong of the prima facie case of disability discrimination under the Rehabilitation Act as an adverse employment action due to discrimination on the basis of disability, *see Brockman v. Snow*, 217 F. App'x 201, 208 (4th Cir. 2007), "this is not an accurate description of the *McDonnell Douglas prima facie* test," for if a plaintiff establishes this element, "then the plaintiff would have already established unlawful discrimination, and the second and third steps of *McDonnell Douglas . . .* would be irrelevant." 711 F. Supp. 2d at 572 n.12.   At any rate, this confusion, which remains ultimately immaterial to the resolution of Defendant's motion, is not properly clarified by me.   I am bound by the law of the Fourth Circuit, and so I have accordingly analyzed the evidence in order to determine whether Plaintiff has established a prima facie case of disability discrimination by the postal service.   I find that he has not, thus entitling Defendant to summary judgment.

Case 6:11-cv-00022-NKM-RSB   Document 42   Filed 07/30/12   Page 21 of 22   Pageid#: 498

find that Plaintiff's series of absences from work was not the actual reason for the termination of his employment. In light of Plaintiff's failure to establish a prima facie case of discrimination on the basis of his alleged disability, and because of the postal service's non-discriminatory rationale for its decision to fire Plaintiff, I find that Defendant is entitled to summary judgment in his favor.

## IV. Conclusion

For the foregoing reasons, Defendant's second motion for summary judgment shall be granted, and Plaintiff's case shall be struck from the Court's active docket. An appropriate order accompanies this memorandum opinion.

The Clerk of the Court is hereby directed to send a certified copy of this memorandum opinion and the accompanying order to all counsel of record.

Entered this ___30th___ day of July, 2012.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

Case 6:11-cv-00022-NKM-RSB   Document 42   Filed 07/30/12   Page 22 of 22   Pageid#: 499